1  **REESE RICHMAN LLP**
   Michael R. Reese (Cal. State Bar. No. 206773)
2  michael@reeserichman.com
   Kim E. Richman
3  kim@reeserichman.com
   Belinda L. Williams
4  belinda@reeserichman.com
   230 Park Avenue, 10th Floor
5  New York, New York 10169
   Telephone: (212) 579-4625
6  Facsimile: (212) 253-4272
7
8  **WHATLEY DRAKE & KALLAS, LLC**
   Deborah Clark-Weintraub
9  dweintraub@wdklaw.com
   Dominique Day
10 dday@wdklaw.com
   1540 Broadway, 37th Floor
11 New York, NY 10036
   Telephone: (212) 447-7070
12 Facsimile:(212) 447-7077
13
14 *Counsel for Plaintiffs*
   [Additional counsel listed on signature page]
15

16              **UNITED STATES DISTRICT COURT**
          **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
17                    **SOUTHERN DIVISION**

18 | JOANNE GAINES and JOHNNIE | SACV08-667 DOC (ANx)
19 | CAVE, on behalf of themselves and | ) Case No. _____
   | all others similarly situated, | )
20 | | ) **COMPLAINT (CLASS ACTION)**
   |                 Plaintiffs, | )
21 |        vs. | ) RICO 18 U.S.C. §1962(a), (c) and (d),
   | | ) 18 U.S.C. §2, Declaratory and Injunctive
22 | HOME LOAN CENTER INC. dba | ) Relief Under 18 U.S.C. §1964(a), TILA
   | LENDING TREE LOANS; | ) 15 U.S.C. §1601; Cal. Bus. & Prof. Code
23 | LENDING TREE, LLC; | ) §17200 *et seq.* and §17500 *et seq.*, Cal.
   | IAC/INTERACTIVECORP; | ) Civ. Code §1750 *et seq.*, Breach of
24 | and DOES 1 through 10. | ) Contract, Breach of Implied Covenant of
   | | ) Good Faith and Fair Dealing, Unjust
25 | | ) Enrichment, Conversion, Money Had and
   |                 Defendants. | ) Received.
26 | | )
27 | | ) **DEMAND FOR JURY TRIAL**
   | | )
28 |

FILED

2008 JUN 13 PM 4:02

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY

1    Plaintiffs Joanne Gaines ("Gaines") and Johnnie Cave ("Cave"), on behalf of
2  themselves and all others similarly situated, by their undersigned attorneys, allege as
3  follows:

4    1.    This is a class action brought by Plaintiffs, on behalf of themselves and
5  other similarly situated persons, against Defendants under the Racketeer Influenced
6  and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961, *et seq.*; Truth in
7  Lending Act ("TILA") 15 U.S.C. § 1601; California law, including California's
8  Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL"),
9  California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.* ("FAL"),
10  and California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*
11  ("CLRA"); and the common law seeking redress for the illegal acts of the Defendants
12  from the period of December 14, 2004 to present ("Class Period") which have resulted
13  in a loss of their money, and for declaratory and injunctive relief to end those practices
14  and prevent further losses to the Classes (as defined below) and future borrowers.

### NATURE OF THE CASE

16    2.    As set forth more fully herein, during the Class Period, Defendants
17  engaged in a fraudulent scheme in violation of federal and state law to exact phantom
18  closing costs from borrowers who obtained mortgage loans from Defendant Home
19  Loan Center Inc. dba Lending Tree Loans ("Lending Tree Loans"). Prior to and in
20  connection with the closing of mortgage loans issued by Lending Tree Loans during
21  the Class Period, Defendants presented Plaintiffs and other borrowers (the "TrueCost
22  Class") with an amount for non-recurring closing costs (*e.g.*, appraisal, credit report,
23  notary, settlement, and title insurance fees) that Defendants characterized as the
24  "TrueCost[SM]" of closing the loans. Plaintiffs relied upon Defendants' representations
25  that these were the true closing costs and entered these loans as a result of these
26  representations. In fact, however, unbeknownst to borrowers, the "TrueCost[SM]"
27  amounts quoted and charged to Plaintiffs and TrueCost Class members were padded
28  to include a significant fee, which was retained by Lending Tree Loans, over and

- 1 -

1    above the actual non-recurring closing costs incurred in connection with the loans. In

2    other words, far from a "true" amount for costs, this was simply profit pocketed by

3    Defendants.

4         3.     In addition, during the Class Period, Defendants deceived Plaintiffs

5    and other borrowers (the "Option ARM Class") regarding the material terms of the

6    highly risky option adjustable rate mortgage ("ARM") loans they obtained from

7    Lending Tree Loans. Plaintiffs relied upon Defendants representations regarding the

8    option ARM loans and entered the ARM loans as a result of Defendants'

9    representations. As set forth more fully below, the form ARM notes drafted by

10   Defendants and signed by Plaintiffs and members of the Option ARM Class failed to

11   disclose that: (a) *the interest rate on the loan was guaranteed to change after the*

12   *first month*; (b) *the payment amount stated in the note would not be sufficient to*

13   *pay interest charges on the loan after the first month resulting in negative*

14   *amortization*; and (c) *the payment amount stated in the note was guaranteed to*

15   *change* given the fact that negative amortization was occurring and the interest rate

16   was changing monthly.

17        4.     Further, Defendants deceived Plaintiffs and certain other members of

18   the Option ARM Class (the "HELOC Subclass") by representing that the members of

19   the HELOC Subclass had to take out home equity lines of credit ("HELOC") along

20   with their option ARM loans in order to obtain a low interest rate on their option

21   ARM loans. Plaintiffs relied upon Defendants' representations that Plaintiffs had to

22   take out the HELOC and did so as a result of Defendants' representations. In fact,

23   however, the HELOCs were not a condition to receiving a low interest rate since a low

24   interest rate is a feature of an option ARM loan. Moreover, because Lending Tree did

25   not provide an option ARM loan large enough to pay off the borrower's existing loans

26   and closing costs in connection with the refinancing, the entire amount of the HELOC

27   was drawn down at the closing leaving Plaintiffs and other members of the HELOC

28   Subclass with not one, but two, highly disadvantageous loans – the option ARM loan

1  and a HELOC, which also carried an adjustable interest rate and had to be fully repaid

2  in a much shorter time period than a conventional mortgage.

3       5.    Defendants' conduct has resulted in actual injury to Plaintiffs and

4  members of the Classes as follows:  (a) members of the TrueCost Class have each

5  paid hundreds of dollars in phantom closing "costs" which were, in fact, pure profit

6  for Defendants; (b) members of the Option ARM Class have made monthly payments

7  significantly greater than the amounts stated in the option ARM notes only to see the

8  principal balance of their loans increase as the applicable interest rate is adjusted on a

9  monthly basis and the minimum payment is insufficient to pay the interest on the loan,

10  let alone the principal; and (c) members of the HELOC Subclass find themselves

11  saddled with a second "mortgage" carrying a higher adjustable interest rate than the

12  option ARM loan they believed was sufficient to refinance their existing loans and

13  that is due to be repaid in a much shorter time frame.  Plaintiffs have brought this

14  action to put an end to Defendants' scheme and to recover the amounts fraudulently

15  obtained by Defendants from Plaintiffs and members of the Classes.

16                                **JURISDICTION AND VENUE**

17       6.    This Court has jurisdiction over the subject matter of this action

18  pursuant to 18 U.S.C. §§ 1961, 1962 and 1964; 28 U.S.C. §§ 1331, 1332 and 1367;

19  and, 15 U.S.C. § 15.  This Court has personal jurisdiction over the Defendants

20  pursuant to 18 U.S.C. § 1965(b) and (d).  Diversity jurisdiction is also conferred

21  over this class action pursuant to the Class Action Fairness Act of 2005, Pub. L.

22  109-2, § 7, 119 Stat. 13 ("CAFA").  It is appropriate to apply the California UCL,

23  FAL and CLRA to protect a nationwide class because the wrongdoing alleged

24  herein occurred in significant part in California, and Defendant Lending Tree

25  Loans has its principal place of business within the state.  The Court has personal

26  jurisdiction over the Defendants because Lending Tree Loans has its principal

27  place of business within California, and the conspiracy and misconduct alleged

28  occurred in significant part in California.

1    7.    Venue is proper in this district pursuant to 18 U.S.C. § 1965(a), 28

2   U.S.C. § 1391(b), 15 U.S.C. § 22, and 28 U.S.C. § 1391 because some of the

3   Defendants are located within this district, do business or transact business within this

4   district, and conduct the interstate trade and commerce described below in substantial

5   part within this district.

6    8.    During all or part of the period in which the events described in this

7   Complaint occurred, each of the Defendants participated in a scheme to defraud

8   Plaintiffs and other members of the Classes in a continuous and uninterrupted flow of

9   interstate commerce.

10    9.    The activities of Defendants, as described herein, were within the flow

11   of, and had a substantial effect on, interstate commerce.

12                                    **PARTIES**

13   **PLAINTIFFS**

14    10.    Plaintiff Gaines is a homeowner who resides in the Bronx, New

15   York. Plaintiff Gaines is a citizen of New York because Ms. Gaines is domiciled

16   in Bronx County, New York and has no intention of changing her domicile.

17   During the Class Period, Gaines relied upon the representations made by

18   Defendants regarding the purported true costs of closing; relied upon Defendants'

19   representations regarding the option ARM agreement detailed below in paragraph

20   32; and relied upon Defendants' representations that a HELOC was required and

21   would be treated as an available line of credit and as a result refinanced her

22   existing mortgage loan and obtained an option ARM agreement and HELOC from

23   Defendant Lending Tree Loans secured by her residence. In connection with her

24   refinancing, Ms. Gaines paid more than $1500 in phantom closing costs pocketed

25   by Defendant Lending Tree Loans; became subject to negative amortization due

26   to undisclosed terms of her option ARM agreement; and, was required to start

27   immediate payment on the HELOC at high interest rates due to Defendants'

28   drawing down the entire line of credit at closing and treating the HELOC as a

1  second mortgage, and not a line of credit.  Prior to refinancing her mortgage with
2  Lending Tree, Ms. Gaines owned her home for approximately ten years and had
3  never missed a payment on her mortgage.

4       11.     Plaintiff Cave is a former homeowner whose home was located in
5  Chesterfield, Virginia.  Plaintiff Cave is a citizen of Virginia because Ms. Cave is
6  domiciled in Chesterfield County, Virginia and has no intention of changing her
7  domicile.  During the Class Period, Cave relied upon the representations made by
8  Defendants regarding the purported true costs of closing; relied upon the
9  Defendants' representations regarding the option ARM agreement detailed below
10 in paragraph 32; and relied upon Defendants' representations that a HELOC was
11 required and would be treated as an available line of credit and as a result of these
12 representations refinanced her existing mortgage loan and obtained an option
13 ARM agreement and HELOC from Defendant Lending Tree Loans secured by her
14 residence.  In connection with her refinancing, Ms. Cave paid more than $900 in
15 phantom closing costs pocketed by Lending Tree Loans; became subject to
16 negative amortization due to undisclosed terms of her option ARM agreement;
17 and, was required to start immediate payment on the HELOC at high interest rates
18 due to Defendants' drawing down the entire line of credit at closing and treating
19 the HELOC as a second mortgage, and not a line of credit.  Prior to refinancing
20 her mortgage with Lending Tree, Ms. Cave owned her home for approximately
21 seven years and had never missed a payment on her mortgage.  Due to
22 Defendants' misconduct as alleged herein, however, Ms. Cave has lost her home
23 and now resides in a senior-living facility in Chesterfield.

24 **DEFENDANTS**

25      12.     Defendant IAC is a Delaware corporation having its principal place
26 of business in New York, New York.  IAC, which describes itself as an
27 "interactive conglomerate" operating businesses in "sectors being transformed by
28 the internet," acquired Defendant Lending Tree, LLC ("Lending Tree") on August

- 5 -

1  8, 2003, and exercises specific and financial control over its operations and the
2  operations of its subsidiaries, including Defendant Lending Tree Loans, dictates
3  the policies and practices of those companies, exercises its power and control over
4  the specific activities upon which the claims herein are based, and is the ultimate
5  recipient of the ill-gotten gains described herein.

6      13.    Defendant Lending Tree, an operating company of Defendant IAC,
7  is  a  Delaware  limited  liability  company  which  maintains  its  corporate
8  headquarters in Charlotte, North Carolina. Lending Tree is a computerized loan
9  originator for mortgage loans performing computerized loan origination services
10  for lenders. Lending Tree does not make mortgage loans or commitments.

11     14.    Defendant Lending Tree Loans, a wholly owned subsidiary of
12  Defendant Lending Tree, is headquartered at 163 Technology Drive, Irvine,
13  California. Lending Tree Loans is a licensed mortgage lender/broker authorized
14  to do business in all fifty states. Lending Tree acquired all of the outstanding
15  stock of Defendant Lending Tree Loans on December 14, 2004.

16     15.    Non-party Lending Tree Settlement Services LLC ("LTSS"), a
17  wholly-owned subsidiary of Lending Tree, is a Delaware limited liability
18  company which maintains its headquarters in Jacksonville, Florida. LTSS
19  provides title, closing, appraisal and flood services to Lending Tree Loans.
20  Launched in July 2004 as a joint venture with Wachovia Corporation's Greenlink
21  LLC, LTSS became a wholly owned subsidiary of Lending Tree LLC in 2005.

22     16.    Defendants DOES 1 through 10, inclusive, are sued herein under
23  fictitious names because their true names and capacities whether individual, associate,
24  corporate, governmental or otherwise are unknown to Plaintiffs. Plaintiffs will ask
25  leave of this Court to amend this Complaint to assert the true names and capacities of
26  said Defendants when same are ascertained. Plaintiffs are informed and believe and
27  thereon allege that each of the Defendants designated herein as DOE, or named, is
28  negligently, carelessly, recklessly, strictly or otherwise responsible in some manner

1  for the events and happenings herein referred to and caused damages directly and
2  proximately thereby to Plaintiffs.

3    17.    The Defendants are sued as principals or agents, servants, and
4  employees of said principals and/or agents of each other and all of the acts performed
5  as agents and employees were performed within the course and scope of their
6  authority and employment and/or agency and with the consent of each of the
7  Defendants.

8                           **FACTUAL ALLEGATIONS**

9  **Background**

10    18.    LendingTree, Inc. was founded in 1996 by its current chairman and
11  CEO Doug Lebda and others.  The LendingTree, Inc. website was launched in 1998
12  and purported to create a competitive marketplace where lenders would compete for
13  consumers' loan business. LendingTree Inc.'s service was free to consumers but not
14  to lenders, who paid a referral fee to be in the LendingTree, Inc. network.
15  LendingTree, Inc. went public in 2000, and was acquired by Defendant IAC in 2003.
16  Following its acquisition by IAC, on December 29, 2004, LendingTree, Inc. converted
17  to Lending Tree LLC, a Delaware limited liability company.

18    19.    In an effort to generate additional revenues following its acquisition by
19  defendant   IAC,   in   December   2004,   Lending   Tree   LLC   acquired
20  HomeLoanCenter.com, an Internet-based direct mortgage lender headquartered in
21  Irvine, California, and formed Defendant Lending Tree Loans, a licensed mortgage
22  broker and lender.  As a result of this acquisition, consumers using Lending Tree
23  LLC's website were frequently "matched" with its own subsidiary, Lending Tree
24  Loans, thus providing Lending Tree LLC with the opportunity to earn more lucrative
25  origination fees on these loans paid by consumers rather than the less profitable
26  referral fees paid by lenders in its network. According to Defendant IAC's Form 10-
27  K for the year ended December 31, 2005, filed with the Securities and Exchange
28  Commission ("SEC"), Lending Tree LLC's ability to close loans sourced through its

1   website in its own name resulted in a substantial increase in revenues per closing as
2   Lending Tree's revenues grew 131% to $367.8 million for the fiscal year ended
3   December 31, 2005.

4           20.     In a further effort to boost revenues and capture a greater share of fee
5   revenue from mortgage lending generated by the Lending Tree LLC website, in July
6   2004, Lending Tree LLC launched LTSS as a joint venture with Wachovia
7   Corporation's Greenlink LLC.  In 2005, Lending Tree LLC bought Wachovia's
8   interest in LTSS.  According to defendant IAC's Form 10-K for the year ended
9   December 31, 2006, filed with the SEC, revenues from settlement services contributed
10  to the 17% growth in Lending Tree's revenues in 2006.

11  **Lending Tree's Scheme to Exact Fraudulent Closing Costs**

12          21.     During the relevant period, Lending Tree touted LTSS' provision of
13  "bundled" settlement services as beneficial to consumers by representing that the
14  "bundles" carried lower total costs than would result if the same services were
15  assembled individually and provided certainty with respect to closing costs. Indeed, a
16  January 28, 2006, article by Kenneth R. Harney available at
17  www.washingtonpost.com titled "A Good-Faith Effort To Clean Up Estimates", cited
18  David Anderson, general manager of LTSS, as stating that Lending Tree "got into the
19  business of offering bundled services as both a quality-control measure *and a way to*
20  *reduce costs for lenders and their borrowers*."  In its communications with
21  consumers, Lending Tree referred to the charge for this "bundle" of settlement
22  services as the "TrueCost$^{SM}$".

23          22.     In fact, however, as conceived and implemented by Lending Tree, the
24  provision of bundled settlement services through LTSS was financially advantageous
25  for Lending Tree, not consumers.  Although LTSS was able to obtain settlement
26  services at a lower cost as a result of its ongoing relationships with vendors providing
27  the services, these savings were not passed on to consumers.  To the contrary, the
28  "True Cost$^{SM}$" figure quoted to borrowers included not only the actual cost of

1  settlement services obtained but also an undisclosed fee to be paid to Lending Tree

2  Loans. The amount of this fee was the difference between the "TrueCost$^{SM}$" amount

3  quoted to borrowers and the amounts actually paid by Lending Tree to the vendors

4  providing settlement services in connection with the loan.

5       23.     Each of the Plaintiffs was victimized by Defendants fraudulent

6  scheme. For example, Lending Tree Loans quoted and charged Ms. Gaines a

7  "TrueCost$^{SM}$" amount of $3500 in connection with her refinancing, which closed in

8  December 2006. In fact, however, the "true" costs of the settlement services in

9  connection with Ms. Gaines' loan were substantially less – $1955.60. The additional

10  $1544.40 was an undisclosed fee pocketed by Lending Tree Loans illegally disguised

11  as a "cost".

12       24.     Similarly, Lending Tree Loans quoted and charged Ms. Cave a

13  "TrueCost$^{SM}$" amount of $2500 in connection with her refinancing, which closed in

14  October 2006. In fact, however, the "true" costs of the settlement services in

15  connection with Ms. Cave's loan were substantially less – $1545.60. The additional

16  $955 was an undisclosed fee pocketed by Lending Tree Loans, again, illegally

17  disguised as a "cost".

18       25.     Plaintiffs were not the only borrowers victimized by Lending Tree

19  during the relevant period. Indeed, these fraudulent fees charged by Lending Tree are

20  so pervasive that a number of consumers have complained about them on consumer

21  advocacy websites. The following are just a few examples (all emphasis added):

23  Paul of Lincoln CA (03/29/07)

24  We called for information after receiving an advertisement

25  in the mail regarding mortgage reduction. Spoke to Scott

26  and were told in order to start process, we had to pay

27  $400.00 up front. We were quoted 5.875% + 2 points **and**

28  **an additional $3505.00 in other costs and fees for a total**

1  of $9600.00 in settlement charges. We decided to check
2  with our bank and found that we were being overcharged
3  points, the upfront fee was not reasonable and the
4  settlement charges were considered high. We decided to
5  go with our bank and when we called Scott he said he
6  would match our bank's quote with a couple of exceptions.

7

8  We advised him that his company was no longer an option.
9  We called and asked that the appraisal be cancelled and we
10  submitted an e-mail to the company also. Unfortunately,
11  the appraiser showed up at our door and we were told by
12  Scott that they were keeping our $400 so we let the
13  appraiser do his job. On the back of the form we responded
14  to, it stated that there are no fees to get started and no
15  obligation... and yet they took and kept our $400.00. In the
16  meantime, we have sent letters (2/21 and 3/7) requesting at
17  least a copy of the appraisal, but to date nothing.

18                    *        *        *
19

20  Steve of Mesa AZ (05/19/05)
21  Lending Tree is using an unusual disclosure technique to
22  hide actual closing costs from borrowers and build in
23  "junk" fees. I have had good experiences with them in the
24  past when they were operating as a referral source, but now
25  they are licensed as a bank and closing the loans in own
26  name, acting as the lender and playing by their own rules
27  with the federally required disclosures. They also tried to
28  force me to use their settlement services company so they

1     *can pocket those revenues as well*.  Unfortunately, even

2     though I am a banking professional myself, I did not realize

3     what they were up to until after they had already collected

4     $600 from me, which they refused to refund.

5

6     Basically they quoted me a standard rate and

7     origination/discount cost which a [sic] agreed to. *They also*

8     *mentioned there could be up to $2900 in additional*

9     *closing costs. They quoted this as the "True Cost" of the*

10     *transaction.  I was unconcerned because I had already*

11     *selected a title company that I routinely worked with and*

12     *knew that my actual costs would be about $1300, plus*

13     *some nominal charges for doc prep, etc. When I received*

14     *their initial Good Faith estimate I was concerned that*

15     *they did not break out the settlement costs*, and they also

16     asked me to sign a disclosure indicating that I had not paid

17     for the appraisal and therefore had no right to a copy of it.

18     What was my $600 for? The secondary investor's lock fee

19     I was told.

20

21     As I am an employee of the secondary investor, I knew this

22     was a lie and that this was really a tactic to keep me from

23     taking the appraisal I paid for and going to another

24     mortgage source. They want to inflict as much financial

25     pain as possible if you figure out you are being ripped off

26     and try to leave. Sadly we lost $600 to Lending Tree, but

27     even with that I am saving over $1000 by going somewhere

28     else. *I spoke to several managers at Lending Tree and*

1        *this was not a one off, but standard operating procedure. I*

2        *suspect thousands of people are being treated this way*

3        *and there are probably grounds for a class action suit.*

4        (http://www.consumeraffairs.com/finance/lending_tree.html

5        (last visited June 10, 2008))

6

7    26.        Similar complaints appear on http://www.amazon.com:

8

9        Deceptive practices, August 11, 2006

10       By Davis L. Cloward - *The "TrueCost" of a loan with*

11       *Lending Tree does not include origination fees for the*

12       *loan. It is Lending Tree's fee. It is one of the ways they*

13       *pay for their adds and make their money. This is the fee*

14       *they charge for their services, which include reducing*

15       *your local costs (some filing fees/appraisal fees/etc).*

16       *What is deceptive about this is that your local costs will*

17       *sum up to less than half what they charge you with the*

18       *"TrueCost". Also, remember, this "TrueCost" does not*

19       *include the origination fees for the loan. So it does not*

20       *represent the true cost of the loan at all. You will likely*

21       *find that any local mortgage broker can beat their offers.*

22       Better yet, try a local Credit Union. (I am NOT a broker nor

23       am I in this business, I merely got fooled and lost the

24       application fee. I had to sign deceptive forms that cost me

25       the application fee BEFORE a full disclosure of the real

26       cost of the loan. Even with the loss of the $600.00 fee it

27       will still be less expensive for me to get my loan elsewhere!

28

1      I consider this a very expensive education and hope to save

2      others the experience.).

3

4      27.     As a result of the foregoing scheme, Defendants have reaped

5  substantial profits to the detriment of Plaintiffs and members of the TrueCost Class.

6  **Lending Tree's Deceptive Sale of Option ARM Mortgages**

7      28.     During the Class Period, Defendants also deceived Plaintiffs and

8  members of the Option ARM Class regarding the terms of option ARM mortgage

9  loans issued by Lending Tree Loans.

10     29.     Option ARMs are risky and complicated home loan products that are

11 not suitable for all borrowers. An option ARM is an adjustable rate mortgage on

12 which the interest rate adjusts monthly but the payment adjusts annually, and

13 borrowers are given options regarding how large a payment they will make. These

14 options include: (i) a fully amortizing payment based on the fully indexed rate that

15 would be sufficient to pay down principal and interest on the loan by the end of its

16 term; (ii) an "interest-only" payment that would cover the interest on the amount

17 borrowed (but not reduce the principal); and (iii) a "minimum" payment that is less

18 than the interest-only payment and is insufficient to cover the interest owed after the

19 first month. The minimum payment option results in a growing loan balance called

20 "negative amortization." In other words, instead of paying down the principal balance

21 of the loan with each monthly payment, if the minimum payment is made the principal

22 balance actually increases.

23     30.     In addition to negative amortization, for borrowers electing the

24 minimum payment option another major risk is "payment shock" – a sudden and sharp

25 increase in the payment for which they are not prepared. Although option ARM loans

26 provide a cap on increases in the monthly payment, this cap can be exceeded in the

27 following two circumstances. First, the payment on an option ARM loan must be

28 "recast" periodically to become fully-amortizing. In other words, the payment is

1   raised to the amount that will pay off the loan within the remaining term at the then
2   current interest rate – *regardless of how large an increase in payment is required*.
3   Second, since the loan balance cannot exceed a negative amortization maximum,
4   which can range from 110% to 125% of the original loan balance, if the principal
5   balance hits the negative amortization maximum, the payment is immediately raised to
6   the fully amortizing level.  In either event, the negative amortization associated with
7   option ARM loans can result in serious payment shock.

8          31.      The form option ARM agreements drafted by Lending Tree Loans and
9   entered into by members of the Option ARM Class misrepresented material terms of
10  these highly risky loans.  Plaintiff Gaines' experience in this regard is typical.

11         32.      During the Class Period, Plaintiff Gaines refinanced her existing
12  mortgage and entered into an option ARM agreement with Defendant Lending Tree
13  Loans secured by her principal residence through an adjustable rate note dated
14  December 16, 2006, between Ms. Gaines and Lending Tree Loans (the "Note").  A
15  true and correct copy of the Note is attached hereto as Exhibit "A" and is incorporated
16  herein by reference as if set out in full and at length.  The Note contained the
17  following misrepresentations.  First, the Note falsely stated that the interest rate on
18  Ms. Gaines' loan *"may change"* after the first month when, in fact, the rate *was*
19  *guaranteed to change* after the first month.  Second, the Note falsely stated that the
20  *"monthly payment could be less than the amount of the interest"* thereby resulting in
21  negative amortization when, in fact, *negative amortization was a certainty* given that
22  the stated monthly payment was computed using the low, initial interest rate that
23  changed after the first month.  Third, the Note falsely stated that the payment amount
24  *"may change"* after the first year when, in fact, the payment amount *was guaranteed*
25  *to change* given the fact that negative amortization was occurring and the interest rate
26  was changing monthly.

27         33.      Similarly, during the Class Period, Plaintiff Cave refinanced her
28  existing mortgage and entered into an option ARM agreement with Defendant

1 | Lending Tree Loans dated October 2006 secured by her principal residence. Upon

2 | information and belief, Plaintiff Cave signed a form adjustable rate note with Lending

3 | Tree Loans containing substantially identical misrepresentations as those contained in

4 | the Note discussed above.

5 |      34.     Plaintiffs were not the only borrowers deceived by Lending Tree with

6 | respect to the terms of option ARM loans during the relevant period as evidenced by

7 | the following complaint from a consumer advocacy website (emphasis added):

8 |      ***Homeloancenter.com is using mail fraud to scam people***

9 |      ***into bad loan situations.*** I responded to a letter sent b[y]

10 |      Homeloancenter.com.

12 |      ***A [f]ast-talking sales person took $600 from my credit***

13 |      ***card without providing all the details of what there [sic]***

14 |      ***1% borrowed rate would do. Nor did he tell me how this***

15 |      ***is called a negative amortization up to the amount of***

16 |      ***115% of my principal balance base[d] on a monthly***

17 |      ***interest adjustment.***

19 |      The sales person told me that my payment would remain

20 |      level for 5 years. I did not know about or how the interest

21 |      would be calculated and he never told me.

23 |      What I was told in the beginning did not represent the

24 |      whole story of the actual loan agreement.

26 |      ***I did not know that Homeloancenter.com adjusts the***

27 |      ***interest rate of the loan payment each month. If there is***

28 |      ***more interest, they keep the payment the same and add the***

- 15 -

1    *interest into the principle [sic] of the loan amount up to*

2    *115% of the loan amount.    This is called negative*

3    *amortization.*

4

5    *This explanation and terms were never used and I was not*

6    *made to realize what negative amortization ment* [sic].

7    (http.//ripoffreport.com/reports/0/153/ripoff0153038.htm)

8

9       35.       Lending Tree further deceived certain members of the Option ARM

10   Class, including Plaintiffs, by representing that they had to take out a HELOC along

11   with their mortgages in order to obtain a low rate on the option ARM loan.  In fact,

12   however, the HELOC was not a condition to receiving a low option ARM rate as

13   Defendants misrepresented.  Moreover, because the amount of the option ARM loan

14   Lending Tree Loans was providing was not large enough to pay off the borrowers'

15   existing loans and the closing costs in connection with the refinancing, the entire

16   amount of the HELOC was drawn down at the closing, subjecting the borrower to

17   payment of both the mortgage and the HELOC that contained a much higher interest

18   rate.

19                          **RICO ALLEGATIONS**

20                            **The Enterprise**

21       36.       Defendants are "persons" within the meaning of 18 U.S.C. § 1961(3).

22       37.       Based upon Plaintiffs' current knowledge, the following persons

23   constitute a group of individuals associated in fact that will be referred to herein as the

24   "Lending Tree Enterprise": (1) Lending Tree; (2) Lending Tree Loans; (3) LTSS; and

25   (4) IAC.

26       38.       The Lending Tree Enterprise is an ongoing organization that engages

27   in, and whose activities affect, interstate commerce.  The members of the Lending

28   Tree Enterprise function as a continuing unit as described below and share the

- 16 -

1  common purpose of maximizing their profits from the mortgage loans, including

2  HELOCs, provided to Plaintiffs and members of the Classes and the HELOC subclass.

3       39.     While Defendants participate in and are members and part of the

4  Lending Tree Enterprise, they also have an existence separate and distinct from the

5  enterprise.

6       40.     Defendants control and operate the Lending Tree Enterprise as

7  follows:

8            (a) By diverting leads and financial information with respect to

9  prospective borrowers from the Lending Tree website to Lending Tree Loans;

10           (b) By utilizing LTSS for non-recurring closing costs;

11           (c) By inflating the actual cost of settlement services obtained by LTSS

12  and quoted and charged to borrowers by an undisclosed amount to be paid to Lending

13  Tree Loans;

14           (d) By concealing in the lump sum "TrueCost$^{SM}$" amount quoted and

15  charged to borrowers the existence and amount of the payments being received by

16  Lending Tree Loans;

17           (e) By requiring the use of form contracts misrepresenting the terms of

18  the highly risky option ARM loans entered into by Plaintiffs and members of the

19  Option ARM Class; and

20           (f) By misrepresenting the terms of the HELOCS entered into by

21       Plaintiffs and members of the HELOC Subclass.

22       41.     The Lending Tree Enterprise has an ascertainable structure separate

23  and apart from the pattern of racketeering activity in which the Defendants engage.

24                          **PREDICATE ACTS**

25       42.     Section 1961(1) of RICO provides that "racketeering activity" includes

26  any act indictable under 18 U.S.C. § 1341 (relating to mail fraud) and 18 U.S.C. §

27  1343 (relating to wire fraud). As set forth below, Defendants have engaged, and

28  continue to engage, in conduct violating each of these laws to effectuate their scheme.

43.     Additionally, in order to make their scheme effective, each of the Defendants sought to and did aid and abet the others in violating the above laws within the meaning of 18 U.S.C. § 2. As a result, their conduct is indictable under 18 U.S.C. § 1341 and 18 U.S.C. § 1343, on this additional basis.

## VIOLATIONS OF 18 U.S.C. §§ 1341 and 1343

44.     For the purpose of executing and/or attempting to execute the above described scheme to defraud or obtain money by means of false pretenses, representations or promises, Defendants, in violation of 18 U.S.C. § 1341, placed in post offices and/or in authorized repositories matter and things to be sent or delivered by the Postal Service, caused matter and things to be delivered by commercial interstate carriers, and received matter and things from the Postal Service or commercial interstate carriers, including, but not limited to, promotional materials, applications, agreements, correspondence, and payments.

45.     For the purpose of executing and/or attempting to execute the above described scheme to defraud or obtain money by means of false pretenses, representations or promises, the Defendants, in violation of 18 U.S.C. § 1343, transmitted and received by wire, matter and things, including, but not limited to, promotional materials, applications, agreements, correspondence, and payments, and made or caused to be made false statements over the telephone, facsimile, electronic mail, and internet.

46.     The matter and things sent by Defendants via the Postal Service, commercial carrier, wire, or other interstate electronic media included, *inter alia:* promotional materials, applications, agreements, correspondence, and loan applications and disclosures that misrepresented the "true" cost of settlement services in connection with loans to Plaintiffs and members of the Classes and the HELOC subclass.

47.     Other matter and things sent through or received via the Postal Service, commercial carrier, wire, or other interstate electronic media by Defendants included

1  information or communications in furtherance of or necessary to effectuate the

2  scheme.

3        48.      Defendants' misrepresentations, acts of concealment and failures to

4  disclose were knowing and intentional, and made for the purpose of deceiving

5  Plaintiffs and the members of the Classes and the HELOC subclass and obtaining their

6  property for Defendants' gain.

7        49.      Defendants either knew or recklessly disregarded the fact that the

8  misrepresentations and omissions described above were material, and Plaintiffs and

9  members of the Classes and the HELOC subclass relied upon the misrepresentations

10  and omissions as set forth above.

11        50.      As a result, Defendants have obtained money and property belonging

12  to the Plaintiffs and members of the Classes and the HELOC subclass, and Plaintiffs

13  and members of the Classes and the HELOC subclass have been injured in their

14  business or property by the Defendants' overt acts of mail and wire fraud, and by their

15  aiding and abetting each other's acts of mail and wire fraud.

16

17                **PATTERN OF RACKETEERING ACTIVITY**

18        51.      Defendants have engaged in a "pattern of racketeering activity," as

19  defined by 18 U.S.C. § 1961(5), by committing or aiding and abetting in the

20  commission of at least two acts of racketeering activity, *i.e.,* indictable violations of

21  18 U.S.C. §§ 1341 and 1343 as described above, within the past four years. In fact,

22  each of the Defendants has committed or aided and abetted in the commission of

23  thousands of acts of racketeering activity. Each act of racketeering activity was

24  related, had a similar purpose, involved the same or similar participants and method of

25  commission, had similar results and impacted similar victims, including Plaintiffs and

26  members of the Classes and the HELOC subclass.

27        52.      The multiple acts of racketeering activity that Defendants committed

28  and/or conspired to commit, or aided and abetted in the commission of, were related to

1  each other, and amount to and pose a threat of continued racketeering activity, and

2  therefore constitute a "pattern of racketeering activity" as defined in 18 U.S.C. §

3  1961(5).

4  ## RICO VIOLATIONS

5       53.     Section 1962(a) of RICO provides that "it shall be unlawful for any

6  person who has received any income derived, directly or indirectly, from a pattern of

7  racketeering activity … in which such person has participated as a principal within

8  the meaning of § 2, title 18, United States Code, to use or invest, directly or indirectly,

9  any part of such income, or the proceeds of such income, in acquisition of any interest

10 in, or the establishment or operation of, any enterprise which is engaged in, or the

11 activities of which affect interstate or foreign commerce."

12      54.     As set forth above, Defendants receive income from their participation

13 as principals in an extensive pattern of racketeering activity.

14      55.     That income is reinvested to finance future racketeering activity, and

15 the future operation of the Lending Tree Enterprise.

16      56.     Section 1962(c) of RICO provides that it "shall be unlawful for any

17 person employed by or associated with any enterprise engaged in, or the activities of

18 which affect, interstate or foreign commerce, to conduct or participate, directly or

19 indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering

20 activity …"

21      57.     Through the patterns of racketeering activities outlined above, the

22 Defendants have also conducted and participated in the affairs of the Lending Tree

23 Enterprise.

24      58.     Section 1962(d) of RICO makes it unlawful "for any person to

25 conspire to violate any of the provisions of subsection (a), (b) or (c), of this section".

26      59.     Defendants' conspiracy to secure money from Plaintiffs and Class

27 members for their own use through the fraudulent scheme described above violates 18

28 U.S.C. § 1962(d).

60.    Each of the Defendants agreed to participate, directly or indirectly, in the conduct of the affairs of the Lending Tree Enterprise through a pattern of racketeering activity comprised of numerous acts of mail fraud and wire fraud, and each Defendant so participated in violation of 18 U.S.C. § 1962(c).

61.    Each Defendant further agreed to use or invest, directly or indirectly, part of the income derived from their acts of mail fraud and wire fraud, which constituted a pattern of racketeering activity, in the establishment, operation and expansion of the Lending Tree Enterprise, and has done so in violation of 18 U.S.C. § 1962(a).

## CLASS ACTION ALLEGATIONS

62.    Pursuant to Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, Plaintiffs bring this action on their own behalves and on behalf of the following nationwide classes of persons (the "Classes"):

(a)    All persons who obtained a mortgage loan from Defendant Lending Tree Loans who were quoted and charged a "TrueCost$^{SM}$" amount for settlement charges that included an undisclosed fee paid to Lending Tree Loans (the "TrueCost Class"); and

(b)    All persons who entered into option ARM loan agreements with Lending Tree Loans (the "Option ARM Class").

63.    Plaintiffs also bring this action on behalf of members of the Option ARM Class who were fraudulently induced to take out a HELOC along with their mortgages (the "HELOC Subclass").

64.    Excluded from the Classes and the HELOC Subclass are Defendants, any entity in which a Defendant has a controlling interest or is a parent or subsidiary of, or any entity that is controlled by a Defendant, and any Defendant's officers, directors, employees, affiliates, legal representatives, heirs, predecessors, successors and assigns.

- 21 -

65.    Plaintiffs do not know the exact size or identities of the proposed Classes or the HELOC Subclass, since such information is in the exclusive control of Defendants. Plaintiffs believe that the Classes and the HELOC Subclass encompass many thousands or tens of thousands of individuals who are geographically dispersed throughout the United States. Therefore, each of the proposed Classes and the HELOC Subclass are so numerous that joinder of all members is impracticable. The Classes and the HELOC Subclass are ascertainable, as the names and addresses of all members of the Classes and the HELOC Subclass can be identified from business records maintained by Defendants.

66.    All members of each of the Classes and the HELOC Subclass have been subject to and affected by the same practices and policies described herein. There are questions of law and fact that are common to each of the Classes and the HELOC Subclass, and predominate over any questions affecting only individual members of each of the Classes and the HELOC Subclass. These questions include, but are not limited to, the following:

- Whether Defendants engaged in a scheme to artificially inflate the settlement costs charged to Plaintiffs and TrueCost Class members;
- Whether Lending Tree Loans breached its contracts with Plaintiffs and members of the Option ARM Class;
- Whether Lending Tree Loans fraudulently induced Plaintiffs and members of the HELOC Subclass to take out a HELOC along with their option ARM mortgages;
- Whether Lending Tree Loans has breached its implied duty of good faith and fair dealing;
- Whether Defendants conspired and/or aided and abetted each other in furtherance of the unlawful acts alleged herein;
- Whether Defendants have engaged in mail and wire fraud;

- Whether Defendants engaged in a pattern of racketeering activity;
- Whether the Lending Tree Enterprise is an enterprise within the meaning of 18 U.S.C. § 1961(4);
- Whether Defendants have used or invested income from their racketeering activities to establish or operate the Lending Tree Enterprise in violation of 18 U.S.C. § 1962(a);
- Whether Defendants conducted or participated in the affairs of the Lending Tree Enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c);
- Whether Defendants' overt and/or predicate acts in furtherance of the conspiracy and/or aiding and abetting and/or direct acts in violation of 18 U.S.C. § 1962 (a) and (c) proximately caused injury to the Plaintiffs' and Class members' business or property;
- Whether Defendants have violated the UCL;
- Whether Defendants have violated the FAL;
- Whether Defendants have violated the CLRA;
- Whether Defendants have been unjustly enriched;
- Whether the Court can enter declaratory and injunctive relief; and
- The proper measure of damages.

67.     The claims of the named Plaintiffs are typical of the claims of each of the Classes and the HELOC Subclass and do not conflict with the interests of any other members of the Classes or the HELOC Subclass in that both the Plaintiffs and the other members of each of the Classes and the HELOC Subclass were subject to the same wrongful policies and practices by Defendants.

68.     The individual named Plaintiffs will fairly and adequately represent the interests of each of the Classes and the HELOC Subclass. They are committed to the vigorous prosecution of the claims of the Classes and the HELOC Subclass and have

1    retained attorneys who are qualified to pursue this litigation and have experience in

2    class actions.

3         69.     The prosecution of separate actions by individual members of the

4    Classes and the HELOC Subclass would create a risk of adjudications with respect to

5    individual members of the Classes and the HELOC Subclass which would, as a

6    practical matter, be dispositive of the interests of other members of the Classes and the

7    HELOC Subclass who are not parties to the action, or could substantially impair or

8    impede their ability to protect their interests.

9         70.     The prosecution of separate actions by individual members of the

10   Classes and the HELOC Subclass would create a risk of inconsistent or varying

11   adjudications with respect to individual members of the Classes and the HELOC

12   Subclass, which would establish incompatible standards of conduct for the parties

13   opposing the Classes and the HELOC Subclass. Such incompatible standards and

14   inconsistent or varying adjudications, on what would necessarily be the same essential

15   facts, proof and legal theories, would also create and allow to exist inconsistent and

16   incompatible rights within the Classes.

17        71.     The Defendants have acted or refused to act on grounds generally

18   applicable to each of the Classes and the HELOC Subclass, making final declaratory

19   or injunctive relief appropriate.

20        72.     The questions of law and fact common to members of each of the

21   Classes and the HELOC Subclass predominate over any questions affecting only

22   individual members.

23        73.     Notice to the proposed Classes and the HELOC Subclass can be

24   achieved through the U.S. mail to the addresses of the members of the Classes and the

25   HELOC Subclass that are kept within Defendants' records. Notice can also be

26   supplemented *via* publication.

27        74.     A class action is superior to other available methods for the fair and

28   efficient adjudication of the controversies herein in that:

- Individual claims by the members of the Classes and the HELOC Subclass are impractical as the costs of pursuit far exceed what any one individual Plaintiff or Class or Subclass member has at stake;

- As a result, individual members of the Classes and the HELOC Subclass have no interest in prosecuting and controlling separate actions;

- It is desirable to concentrate litigation of the claims herein in this forum; and

- The proposed class action is manageable.

## CAUSES OF ACTION

## COUNT I

## AGAINST ALL DEFENDANTS

## VIOLATION OF RICO 18 U.S.C. § 1962(a)

75.    Plaintiffs incorporate and reallege the paragraphs above as if fully set forth herein.

76.    This claim for relief arises under 18 U.S.C. § 1964(a).

77.    As set forth above, Defendants have violated 18 U.S.C. § 1962 (a) by using and investing income received from a pattern of racketeering, directly or indirectly, to establish and operate the Lending Tree Enterprise, which is engaged in, and whose activities affect, interstate commerce.

78.    As a direct and proximate result, Plaintiffs and members of the Classes and the HELOC Subclass have been injured in their business or property by both the predicate acts which make up the Defendants' patterns of racketeering activity and their investment and reinvestment of income therefrom to operate, expand and perpetuate the Lending Tree Enterprise.

1    79.    Specifically, Plaintiffs and members of the Classes have been injured

2    in their business or property as follows: (a) members of the TrueCost Class have each

3    paid hundreds of dollars in phantom closing costs; (b) members of the Option ARM

4    Class made monthly payments significantly greater than the amounts stated in the

5    option ARM notes only to see the principal balance of their loans increase as the

6    applicable interest rate is adjusted on a monthly basis and the minimum payment is

7    insufficient to pay the interest on the loan, let alone the principal; and (c) members of

8    the HELOC Subclass find themselves saddled with a second "mortgage" carrying a

9    higher adjustable interest rate than the option ARM loan they believed was sufficient

10    to refinance their existing loans and that is due to be repaid in a much shorter time

11    frame.

12

13                              **COUNT II**

14                       **AGAINST ALL DEFENDANTS**

15                **VIOLATION OF RICO 18 U.S.C. § 1962(c)**

16    80.    Plaintiffs incorporate and reallege the paragraphs above as if fully set

17    forth herein.

18    81.    This claim for relief arises under 18 U.S.C. § 1964(c).

19    82.    As set forth above, Defendants have violated 18 U.S.C. § 1962(c) by

20    conducting, or participating directly or indirectly in the conduct of, the affairs of the

21    Lending Tree Enterprise through a pattern of racketeering.

22    83.    As a direct and proximate result, Plaintiffs and members of the Classes

23    and the HELOC Subclass have been injured in their business or property by both the

24    predicate acts which make up the Defendants' patterns of racketeering activity and

25    their investment and reinvestment of income therefrom to operate, expand and

26    perpetuate the Lending Tree Enterprise.

27    84.    Specifically, Plaintiffs and members of the Classes and the HELOC

28    Subclass have been injured in their business or property as follows: (a) members of

1  the TrueCost Class have each paid hundreds of dollars in phantom closing costs; (b)

2  members of the Option ARM Class made monthly payments significantly greater than

3  the amounts stated in the option ARM notes only to see the principal balance of their

4  loans increase as the applicable interest rate is adjusted on a monthly basis and the

5  minimum payment is insufficient to pay the interest on the loan, let alone the

6  principal; and (c) members of the HELOC Subclass find themselves saddled with a

7  second "mortgage" carrying a higher adjustable interest rate than the option ARM

8  loan they believed was sufficient to refinance their existing loans and that is due to be

9  repaid in a much shorter time frame.

10

11                            **COUNT III**

12                      **AGAINST ALL DEFENDANTS**

13            **VIOLATION OF RICO 18 U.S.C. § 1962(d) BY**
14            **CONSPIRING TO VIOLATE 18 U.S.C. § 1962(a) AND (c)**

15

16        85.    Plaintiffs incorporate and reallege the paragraphs above as if fully set

17  forth herein.

18        86.    This claim for relief arises under 18 U.S.C. § 1964(c).

19        87.    In violation of 18 U.S.C. § 1962(d), Defendants have, as set forth

20  above, conspired to violate:  18 U.S.C. § 1962(a) by using and investing income

21  received from a pattern of racketeering, directly or indirectly, to establish and operate

22  the Lending Tree Enterprise, which is engaged in, and whose activities affect,

23  interstate commerce; and 18 U.S.C. § 1962(c) by conducting, or participating directly

24  or indirectly in the conduct of the affairs of the Lending Tree Enterprise through a

25  pattern of racketeering.

26        88.    As a direct and proximate result, Plaintiffs and members of the Classes

27  and the HELOC Subclass have been injured in their business or property by both the

28  predicate acts which make up the Defendants' patterns of racketeering and their

1   investment and reinvestment of income therefrom to operate, expand and perpetuate

2   the Lending Tree Enterprise.

3          89.       Specifically, Plaintiffs and Class members have been injured in their

4   business or property as follows:  (a) members of the TrueCost Class have each paid

5   hundreds of dollars in phantom closing costs; (b) members of the Option ARM Class

6   made monthly payments significantly greater than the  amounts stated in the option

7   ARM notes only to see the principal balance of their loans increase as the applicable

8   interest rate is adjusted on a monthly basis and the minimum payment is insufficient to

9   pay the interest on the loan, let alone the principal; and (c) members of the HELOC

10  Subclass find themselves saddled with a second "mortgage" carrying a higher

11  adjustable interest rate than the option ARM loan they believed was sufficient to

12  refinance their existing loans and that is due to be repaid in a much shorter time frame.

13

14                              **COUNT IV**

15                       **AGAINST ALL DEFENDANTS**

16
                 **VIOLATION OF 18 U.S.C. § 2 BY SEEKING TO AND**
17               **AIDING AND ABETTING IN THE VIOLATION OF**
18                      **18 U.S.C. § 1962(a) AND (c)**

19
          90.       Plaintiffs incorporate and reallege the paragraphs above as if fully set
20
     forth herein.
21
          91.       This claim arises under 18 U.S.C. § 1964 (a) and (c).
22
          92.       As set forth above, Defendants knowingly, and with shared intent,
23
     sought to, and have, aided and abetted each of the other Defendants in the commission
24
     of predicate acts, in engaging in a pattern of racketeering activity, and in violation of
25
     U.S.C. § 1962(a) and (c) as described above.
26
          93.       As a result, under 18 U.S.C. § 2, the RICO violations of each
27
     Defendant are those of the others as if they had been committed directly by them.
28

94.     As a direct and proximate result of the fact that each Defendant aided and abetted the others in violating 18 U.S.C. § 1962 (a) and (c), Plaintiffs and members of the Classes and the HELOC Subclass have been injured in their business or property by both the predicate acts which make up the Defendants' patterns of racketeering and their investment and reinvestment of income therefrom to operate, expand and perpetuate the Lending Tree Enterprise.

95.     Specifically, Plaintiffs and Class members have been injured in their business or property as follows:  (a) members of the TrueCost Class have each paid hundreds of dollars in phantom closing costs; (b) members of the Option ARM Class made monthly payments significantly greater than the amounts stated in the option ARM notes only to see the principal balance of their loans increase as the applicable interest rate is adjusted on a monthly basis and the minimum payment is insufficient to pay the interest on the loan, let alone the principal; and (c) members of the HELOC Subclass find themselves saddled with a second "mortgage" carrying a higher adjustable interest rate than the option ARM loan they believed was sufficient to refinance their existing loans and that is due to be repaid in a much shorter time frame.

## COUNT V

### AGAINST LENDING TREE LOANS

### VIOLATION OF THE TRUTH IN LENDING ACT

96.     Plaintiffs incorporate and reallege the paragraphs above as if fully set forth herein.

97.     The Federal Truth In Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.* was enacted "to promote the informed use of consumer credit by requiring disclosures about its terms and costs." 12 C.F.R. § 226.1(b). To this end, TILA requires that very specific disclosures be made "clearly and conspicuously in writing." 12 C.F.R. § 226.17(a).

1    98.    Pursuant to TILA, lenders are required to disclose "[a] separate written

2    itemization of the amount financed including . . . [a]ny amounts paid to other persons

3    by the creditor on the consumer's behalf" and the identity of the persons paid.  12

4    C.F.R. § 226.18(c)(iii).  Defendant Lending Tree Loans violated this provision of

5    TILA by failing to disclose that a portion of the "TrueCost$^{SM}$" settlement amount

6    quoted and charged to borrowers was being paid to Lending Tree Loans rather than

7    being used to pay actual settlement costs.

8    99.    As a result of the foregoing violations of TILA by Defendant Lending

9    Tree Loans, Plaintiffs and members of the TrueCost Class have each suffered actual

10   damages as a result of having paid hundreds of dollars in phantom closing costs

11   pocketed by Defendant Lending Tree Loans.  In addition, Plaintiffs and members of

12   the TrueCost Class are entitled to statutory damages pursuant to 15 U.S.C. § 1640.

13   100.   Under the governing doctrine of equitable tolling this claim is not time

14   barred for Plaintiff Gaines and Cave because the fraud was not discovered by them

15   until more than one year after the closing of their loans and could not have been

16   discovered by Plaintiffs at an earlier date in the exercise of reasonable diligence.  At

17   their respective closings, Plaintiffs were charged the TrueCost amounts that had been

18   previously disclosed and had no reason to suspect that a portion of this fee was not for

19   legitimate closing costs in connection with their loans.

20                                **COUNT VI**

21                        **AGAINST ALL DEFENDANTS**

22        **VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS**
                              **CODE §17200, *ET SEQ.***
23

24   101.   Plaintiffs incorporate and reallege the paragraphs above as if fully set

25   forth herein.

26   102.   As set forth above, Defendants' scheme included making false and

27   misleading representations to borrowers, occurring in significant part in California,

28

1  which constitutes unlawful, unfair and fraudulent business practices under the UCL.

2  In particular, because Defendants' scheme was devised, implemented and directed

3  from Lending Tree's headquarters in California, the UCL applies to a class of

4  borrowers, both within and outside of California, who have been harmed as a result.

5  Moreover, California has a substantial interest in preventing fraudulent practices

6  within the State which may have an effect both in California and throughout the rest

7  of the country.

8      103.    Specifically, Plaintiffs and members of the Classes and the HELOC

9  Subclass have been injured in their business or property as follows: (a) members of

10 the TrueCost Class have each paid hundreds of dollars in phantom closing costs; (b)

11 members of the Option ARM Class made monthly payments significantly greater than

12 the amounts stated in the option ARM notes only to see the principal balance of their

13 loans increase as the applicable interest rate is adjusted on a monthly basis and the

14 minimum payment is insufficient to pay the interest on the loan, let alone the

15 principal; and (c) members of the HELOC Subclass find themselves saddled with a

16 second "mortgage" carrying a higher adjustable interest rate than the option ARM

17 loan they believed was sufficient to refinance their existing loans and that is due to be

18 repaid in a much shorter time frame.

19     104.    Plaintiffs' claims and the claims of the Classes and the HELOC

20 Subclass involve questions of common and general interest.

21     105.    Plaintiffs and members of the Classes and the HELOC Subclass have

22 suffered losses of money and property as a result of Defendants' unlawful, deceptive

23 and unfair business practices.  As a result of Defendants' violations of the UCL,

24 Plaintiffs and members of the Classes and the HELOC Subclass are entitled to bring

25 this claim for disgorgement and to recover restitution, reasonable attorneys' fees, and

26 costs and other injunctive or declaratory relief as may be available.

27

28

**COUNT VII**

**AGAINST ALL DEFENDANTS**

**VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE §17500, *ET SEQ.***

106.     Plaintiffs incorporate and reallege the paragraphs above as if fully set forth herein.

107.     Defendants violated California's FAL because their scheme involved deceptive, untrue and misleading advertising.  In particular, because Defendants' scheme was devised, implemented and directed from Lending Tree's headquarters in California, the FAL applies to a class of borrowers, both within and outside of California, who have been harmed as a result.  Moreover, California has a substantial interest in preventing fraudulent practices within the State which may have an effect both in California and throughout the rest of the country.

108.     Specifically, Plaintiffs and members of the Classes and the HELOC Subclass have been injured in their business or property as follows:  (a) members of the TrueCost Class have each paid hundreds of dollars in phantom closing costs; (b) members of the Option ARM Class made monthly payments significantly greater than the amounts stated in the option ARM notes only to see the principal balance of their loans increase as the applicable interest rate is adjusted on a monthly basis and the minimum payment is insufficient to pay the interest on the loan, let alone the principal; and (c) members of the HELOC Subclass find themselves saddled with a second "mortgage" carrying a higher adjustable interest rate than the option ARM loan they believed was sufficient to refinance their existing loans and that is due to be repaid in a much shorter time frame.

109.     Defendants should be ordered to disgorge and make restitution to Plaintiffs and members of the Classes and HELOC Subclass from the excessive payments and profits obtained at their expense.

**COUNT VIII**

**AGAINST ALL DEFENDANTS**

**VIOLATION OF CALIFORNIA'S CLRA,**
**CAL. CIV. CODE §1750, *ET SEQ.***

110.     Plaintiffs reallege and incorporate by reference the paragraphs above as if fully set forth herein.

111.     This cause of action is brought pursuant to the CLRA and seeks relief for the sale or lease of goods or services to consumers.

112.     Lending Tree's actions, omissions, representations and conduct have violated, and continue to violate, the CLRA because they extend to transactions that are intended to result, or which have resulted, in the sale or lease of goods or services to consumers.

113.     Plaintiffs are "consumers" as that term is defined by the CLRA in California Civil Code § 1761(d).

114.     The option ARM loans, HELOCs and settlement services were "goods" and/or "services" within the meaning of California Civil Code § 1761(a) and (b).

115.     By engaging in the actions, representations and conduct set forth in this complaint, Lending Tree has violated, and continues to violate, § 1770(a)(5) of the CLRA.  Specifically, in violation of California Civil Code § 1770(a)(5), Lending Tree's acts and practices constitute unfair methods of competition and unfair or deceptive acts or practices in that they misrepresent the characteristics and benefits of the loans and services in question.

116.     By engaging in the actions, representations and conduct set forth in this complaint, Lending Tree has violated, and continues to violate, § 1770(a)(7) of the CLRA.  Specifically, in violation of California Civil Code § 1770(a)(7), Lending Tree's acts and practices constitute unfair methods of competition and unfair or

1  deceptive acts or practices in that they misrepresent the particular standard, quality or

2  grade of the goods or services.

3       117.    By engaging in the actions, representations and conduct set forth in this

4  complaint, Lending Tree has violated, and continues to violate, § 1770(a)(9) of the

5  CLRA. Specifically, in violation of California Civil Code § 1770(a)(9), Lending

6  Tree's acts and practices constitute unfair methods of competition and unfair or

7  deceptive acts or practices in that they advertised goods and services with the intent

8  not to sell them as advertised.

9       118.    By engaging in the actions, representations and conduct set forth in this

10 Class Action Complaint, Lending Tree has violated, and continues to violate, §

11 1770(a)(14) of the CLRA. Specifically, in violation of California Civil Code §

12 1770(a)(14), Lending Tree's acts and practices constitute unfair methods of

13 competition and unfair or deceptive acts or practices in that they represent that a

14 transaction confers or involves rights, remedies, or obligations which it does not have

15 or involve, or which are prohibited by law.

16      119.    By engaging in the actions, representations and conduct set forth in this

17 Class Action Complaint, Lending Tree has violated, and continues to violate, §

18 1770(a)(16) of the CLRA. Specifically, in violation of California Civil Code §

19 1770(a)(16), Lending Tree's acts and practices constitute unfair methods of

20 competition and unfair or deceptive acts or practices in that they represent that the

21 subject of a transaction has been supplied in accordance with a previous representation

22 when it has not.

23      120.    Plaintiffs request that this Court enjoin Lending Tree from continuing

24 to employ the unlawful methods, acts and practices alleged herein pursuant to

25 California Civil Code § 1780(a)(2). If Lending Tree is not restrained from engaging

26 in these types of practices in the future, Plaintiffs, members of the Classes and the

27 HELOC Subclass, and other members of the general public will continue to suffer

28 harm.

1    121.    At this time, Plaintiffs specifically do not seek any damages under the

2  CLRA.  Plaintiffs will amend this Class Action Complaint to seek damages in

3  accordance with the CLRA after providing Defendants with notice pursuant to Cal.

4  Civ. Code § 1782.

5                              **COUNT IX**

6                    **AGAINST LENDING TREE LOANS**

7                      **BREACH OF CONTRACT**

8    122.    Plaintiffs reallege and incorporate by reference the paragraphs above as

9  if fully set forth herein.

10    123.    Plaintiffs and other members of the TrueCost Class entered agreements

11  drafted by Lending Tree Loans whereby Defendant Lending Tree Loans falsely

12  represented certain costs as the actual settlement costs.  Defendant Lending Tree

13  Loans breached these agreements by charging Plaintiffs costs that were not in fact

14  "true" costs, but merely inflated fees that Lending Tree Loans pocketed for itself.

15    124.    Plaintiffs and other members of the Option ARM Class entered into

16  form option ARM agreements drafted by Defendant Lending Tree Loans which

17  provided that interest *and principal* would be paid every month.  Defendant Lending

18  Tree Loans breached the option ARM agreements by failing to apply any portion of

19  Plaintiffs and Option ARM Class members' monthly payments towards the

20  outstanding principal balance of the loans.

21    125.    Plaintiffs and other members of the HELOC Subclass entered into

22  HELOC agreements drafted by Defendant Lending Tree Loans based upon the

23  representation that the HELOC was a necessary condition to receive a low interest rate

24  ARM mortgage and that the HELOC would provide Plaintiffs with a line of available

25  credit.  Defendant Lending Tree Loans breached this agreement because (a) the

26  HELOC was not necessary to obtain an ARM mortgage and (b) there was no credit

27  available on the HELOC as Defendant Lending Tree Loans drew down the entire

28

- 35 -

1  amount of the HELOC at closing, leaving no credit available and subjecting Plaintiffs

2  to the higher interest rate of the HELOC.

3      126.    As a result of Defendant Lending Tree Loans' breaches, Plaintiffs and

4  members of the Classes and the HELOC Subclass have been injured in their business

5  or property as follows:  (a) members of the TrueCost Class have each paid hundreds

6  of dollars in phantom closing costs; (b) the principal balances on the loans of the

7  Options ARM Class have increased rather than decreased notwithstanding the fact that

8  they have made payments far in excess of the payment amounts set forth in the option

9  ARM agreements; and (c) members of the HELOC Subclass find themselves saddled

10  with a second "mortgage" carrying a higher adjustable interest rate than the option

11  ARM loan they believed was sufficient to refinance their existing loans and that is due

12  to be repaid in a much shorter time frame.

<div align="center">

**COUNT X**

**AGAINST LENDING TREE LOANS**

**BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR
DEALING**

</div>

17      127.    Plaintiffs reallege and incorporate by reference the paragraphs above as

18  if fully set forth herein.

19      128.    California law implies a covenant of good faith and fair dealing in

20  every contract.  The implied covenant imposes on contracting parties the obligation to

21  discharge their contractual obligations fairly and in good faith.

22      129.    Plaintiffs and members of the Classes and HELOC Subclass did all, or

23  substantially all of the significant things their agreements with Lending Tree Loans

24  required.  Lending Tree Loans' conduct as set forth above unfairly interfered with the

25  right of Plaintiffs and members of the Classes and HELOC Subclass to receive the

26  benefits of the agreements they signed.

27      130.    As a result of Defendant's breach of the covenant of good faith and fair

28  dealing implied, Plaintiffs and members of the Classes and the HELOC Subclass have

<div align="center">

- 36 -

</div>

1  been injured in their business or property as follows: (a) members of the TrueCost

2  Class have each paid hundreds of dollars in phantom closing costs; (b) the principal

3  balances on the loans of the Options ARM Class have increased rather than decreased

4  notwithstanding the fact that they have made payments far in excess of the payment

5  amounts set forth in the option ARM agreements; and (c) members of the HELOC

6  Subclass find themselves saddled with a second "mortgage" carrying a higher

7  adjustable interest rate than the option ARM loan they believed was sufficient to

8  refinance their existing loans and that is due to be repaid in a much shorter time frame.

9                                    **COUNT XI**

10                          **AGAINST ALL DEFENDANTS**

11                          <u>**UNJUST ENRICHMENT**</u>

12         131.    Plaintiffs incorporate and reallege the paragraphs above as if fully set

13  forth herein.

14         132.    Defendants' deceptive scheme unjustly enriched Defendants, to the

15  detriment of the Classes and the HELOC Subclass, by causing Defendants to receive

16  excessive monetary payments from Plaintiffs and the Classes and the HELOC

17  Subclass.

18         133.    Specifically, Plaintiffs and members of the Classes and the HELOC

19  Subclass have been injured in their business or property in a variety of ways,

20  including paying fraudulent closing costs; paying amounts far in excess of those set

21  forth in the option ARM agreements; and paying the high interest rates of the

22  HELOC.

23         134.    Defendants' retention of funds paid by Plaintiffs and members of the

24  Classes and the HELOC Subclass violates the fundamental principles of justice,

25  equity, and good conscience.

26         135.    Accordingly, Defendants should be ordered to return any funds

27  obtained as a result of their deceptive scheme to the Classes and the HELOC Subclass.

28

## COUNT XII

## AGAINST ALL DEFENDANTS

## CONVERSION

136.    Plaintiffs incorporate and reallege the paragraphs above as if fully set forth herein.

137.    Plaintiffs and members of the TrueCost Class possessed the money paid to Defendants that are in excess of the actual costs attributable to the closing of their loans. Plaintiffs and members of the Option ARM Class possessed and paid the money to Defendants that were paid as a result of the negative amortization of the mortgages. Plaintiffs and members of the HELOC Subclass possessed and paid to Defendants the money for the higher interest rates of the HELOCs.

138.    Defendants intentionally took possession of money from Plaintiffs and members of the Classes and the HELOC subclass and have prevented Plaintiffs and members of the Classes and the HELOC subclass from the possession of same as the monies paid to Defendants. The excess monies have not otherwise been returned.

139.    Plaintiffs and the members of the Classes and the HELOC subclass did not consent to Defendants' possession of the monies paid in light of the fact that Defendants had no right to such monies.

140.    Plaintiffs and the members of the Classes and the HELOC subclass were harmed as a result of Defendants' conduct and such conduct was a substantial factor in causing harm to Plaintiffs and members of the Classes and the HELOC subclass.

1

**COUNT XIII**

2

**AGAINST ALL DEFENDANTS**

3

**MONEY HAD AND RECEIVED**

4

5        141.    Plaintiffs incorporate and reallege the paragraphs above as if fully set

6   forth herein.

7        142.    Plaintiffs and members of the TrueCost Class seek to recover the

8   money paid to Defendants that are in excess of the actual costs attributable to the

9   closing of their loans with Defendants on the ground such excess sums were paid as a

10  result of mistake, duress, oppression and due to undue advantage being taken of them

11  in light of their situation whereby money was exacted to which the Defendants had no

12  legal right.   In fact, under no scenario were Defendants entitled to collect the

13  aforementioned monies.  Plaintiffs and members of the Option ARM Class seek to

14  recover amounts paid due to the negative amortization of the mortgages.  Plaintiffs

15  and members of the HELOC Subclass seek to recover amounts paid for the higher

16  interest rates of the HELOCs.

17       143.    Defendants received money that was intended to be used for the

18  benefit of Plaintiff and the members of the Classes and the HELOC subclass as

19  described above that Defendants had no right to while Plaintiffs and members of the

20  Classes and the HELOC subclass had a legal right to possess such monies.

21       144.    The money received by Defendants was not used for the benefit of

22  Plaintiff s and the members of the Classes and the HELOC subclass.

23       145.    Defendants have not given the money back to Plaintiffs and the

24  members of the Classes and the HELOC subclass thereby directly causing them

25  damage.

26

27

28

1

**PRAYER FOR RELIEF**

2        WHEREFORE, Plaintiffs demand judgment against Defendants as follows:

3        (a)    Certification of the Classes and the HELOC Subclass pursuant to Rule 23

4    of the Federal Rules of Civil Procedure, certifying Plaintiffs as the representatives of

5    the Classes and the HELOC Subclass, and designating their counsel as counsel for the

6    Classes and the HELOC Subclass;

7        (b)    A declaration that Defendants have committed the violations alleged

8    herein;

9        (c)    An award of treble the amount of damages suffered by Plaintiffs and

10    members of the Classes and the HELOC Subclass as proven at trial plus interest and

11    attorneys' fees and expenses pursuant to 18 U.S.C. § 1962(c) and (d);

12        (d)    Ordering Defendants to disgorge the payments and profits they

13    wrongfully obtained at the expense of Plaintiffs and members of the Classes and the

14    HELOC Subclass;

15        (e)    Ordering that restitution be made to Plaintiffs and members of the

16    Classes and the HELOC Subclass for Defendants' unjust enrichment;

17        (f)    Ordering that an accounting be made by Defendants of their wrongfully

18    obtained payments and profits;

19        (g)    An injunction preventing Defendants from engaging in future fraudulent

20    practices;

21        (h)    For declaratory and injunctive relief pursuant to California Civil Code

22    § 1780, only, as Plaintiffs through this Complaint expressly do not seek any monetary

23    type of relief pursuant to the CLRA;

24        (i)    Costs of this action, including reasonable attorneys' fees and expenses;

25    and

26    //

27    //

28    //

1          (j)      Any such other and further relief as this Court deems just and proper.

2    DATED:      June 13, 2008                    Respectfully submitted,

3

4                                                 REESE RICHMAN LLP
5                                                 Michael R. Reese
                                                  Kim E. Richman
6                                                 Belinda L. Williams
7                                                 230 Park Avenue, 10th Floor
                                                  New York, New York 10169
8                                                 Telephone:  (212) 579-4625
                                                  Facsimile:  (212) 572-4272
9

10                                                WHATLEY DRAKE
                                                    & KALLAS, LLC
11                                                Deborah Clark-Weintraub
                                                  Dominique Day
12                                                1540 Broadway, 37th Floor
                                                  New York, NY  10036
13                                                Telephone:  (212) 447-7070
                                                  Facsimile:  (212) 447-7077
14

15                                                LANGE & KONCIUS, LLP
                                                  Joseph J.M. Lange (128115)
16                                                jlange@lange-koncius.com
                                                  Jeffrey A. Koncius (189803)
17                                                jkoncius@lange-koncius.com
18                                                222 North Sepulveda, Suite 1560
                                                  El Segundo, California 90245
19                                                Telephone:  (310) 414-1880
                                                  Facsimile:  (310) 414-1882
20                                                *Counsel for Plaintiffs*

21

22

23

24

25

26

27

28

1

## **DEMAND FOR JURY TRIAL**

2

3    Plaintiff hereby demands a jury trial on all issues so triable as provided by

4   Rule 38(a) of the Federal Rules of Civil Procedure.

5   DATED:    June 13, 2008                Respectfully submitted,

6

7

8                                          REESE RICHMAN LLP
                                           Michael R. Reese
9                                          Kim E. Richman
                                           Belinda L. Williams
10                                         230 Park Avenue, 10th Floor
                                           New York, New York 10169
11                                         Telephone:  (212) 579-4625
                                           Facsimile:  (212) 572-4272
12

13                                         WHATLEY DRAKE
                                             & KALLAS, LLC
14                                         Deborah Clark-Weintraub
                                           Dominique Day
15                                         1540 Broadway, 37th Floor
                                           New York, NY  10036
16                                         Telephone:  (212) 447-7070
                                           Facsimile:  (212) 447-7077
17

18                                         LANGE & KONCIUS
                                           Joseph J.M. Lange
19                                         Jeffrey A. Koncius
                                           222 North Sepulveda, Suite 1560
20                                         El Segundo, California 90245
                                           Telephone:  (310) 414-1880
21                                         Facsimile:  (310) 414-1882

22
                                           ***Counsel for Plaintiffs***
23

24

25

26

27

28

**EXHIBIT A**

**REDACTED**

Loan # 2120672

# ADJUSTABLE RATE NOTE
## 12 MONTH MTA
(          Payment and Rate Caps )

THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE LIMIT STATED IN THIS NOTE.

December 19, 2006                 Irvine                 CA
[Date]                         [City]                   [State]

[Property Address] **REDACTED**

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ **REDACTED** (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is Home Loan Center, Inc., dba LendingTree Loans, a California Corporation

I will make all payments under this Note in the form of cash, check or money order. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

### (A) Interest Rate

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of   **1.700**   %. The interest rate I will pay may change.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of this Note.

### (B) Interest Rate Change Dates

The interest rate I will pay may change on the first day of      **February 2007**      , and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date.

### (C) Interest Rate Limit

My interest rate will never be greater than      **9.9500**    %.

### (D) Index

Beginning with the first Interest Rate Change Date, my interest rate will be based on an index. The "Index" is the Twelve-Month Average, determined as set forth below, of the monthly yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rate (H.15)"("the Monthly Yields"). The Twelve-Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12.

The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is call the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

MULTISTATE ADJUSTABLE RATE NOTE
84801185(0010)
50449L1                  Page 1 of 4                  Form 3003 4/2000

Initials: _____

(E) Calculation of Interest Rate Changes

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding
**Two and 9500/10000**     percentage point(s) (     **2.9500**     %) to the Current Index.
Subject to the limit stated in Section 2(C) above, the result of this addition will be my new interest rate until the next Interest Rate Change Date.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making payments every month.

I will make my monthly payments on the first day of each month beginning on **February 01, 2007**.

I will make these payments every month until I have paid all the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before principal. If, on **January 01, 2037**, I still owe amounts under this Note, I will pay these amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **163 Technology Drive, Irvine, CA  92618**     or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. **$1,106.98**.     This amount may change.

(C) Payment Change Dates

My monthly payment may change as required by Section 3(D) below beginning on the     **1st**     day of
**February 2008**     , and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment.

I will pay the amount of my new monthly payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

(D) Calculation of Monthly Payment Changes

Before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Payment Change Date in full on the Maturity Date in substantially equal installments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." Unless Section 3(F) or 3(G) below requires me to pay a different amount, my new monthly payment will be in the amount of the Full Payment, except that my new monthly payment will be limited to an amount that will not be more than 7.5% greater or less than the amount of my last monthly payment due before the Payment Change Date.

(E) Additions to My Unpaid Principal

My monthly payment could be less than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. If so, each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid principal. The Note Holder also will add interest on the amount of this difference to my unpaid principal each month. The interest rate on the interest added to principal will be the rate required by Section 2 above.

(F) Limit on My Unpaid Principal; Increased Monthly Payment

My unpaid principal can never exceed a maximum amount equal to **One Hundred Fifteen** percent (     **115.000**     %) of the principal amount I originally borrowed. Because of my paying only limited monthly payments, the addition of unpaid interest to my unpaid principal under Section 3(E) above could cause my unpaid principal to exceed that maximum amount when interest rates increase. In that event, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment. The new monthly payment will be in an amount that would be sufficient to repay my then unpaid principal in full on the Maturity Date in substantially equal installments at the interest rate effective during the preceding month.

**(G) Required Full Payment**

On the 5th Payment Change Date and on each succeeding 5th Payment Change Date thereafter, I will begin paying the Full Payment as my monthly payment until my monthly payment changes again. I also will begin paying the Full Payment as my monthly payment on the final Payment Change Date.

**4. NOTICE OF CHANGES**

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a prepayment if I have not made all the monthly payments due under this Note.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use my prepayments to reduce the amount of principal that I owe under this Note. However, the Note Holder may apply my prepayment to the accrued and unpaid interest on the prepayment before applying my prepayment to reduce the principal amount of this Note. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to these changes. My partial prepayment may reduce the amount of my monthly payments after the first Payment Change Date following my partial prepayment. However, any reduction due to my partial prepayment may be offset by an interest rate increase.

**6. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of my monthly payment by the end of     **15**     calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be     **2.000**     % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. These expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of these conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)     _____ (Seal)
Carl Gaines                    Borrower     Joanne Gaines                  Borrower

_____ (Seal)     _____ (Seal)
                               Borrower                                    Borrower

_____ (Seal)     _____ (Seal)
                               Borrower                                    Borrower

[Sign Original Only]

8482185 (0010)  50449L4              Page 4 of 4              Form 3003 4/2000

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge David O. Carter and the assigned discovery Magistrate Judge is Arthur Nakazato.

The case number on all documents filed with the Court should read as follows:

## SACV08- 667 DOC (ANx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

===============================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[ ] **Western Division**
312 N. Spring St., Rm. G-8
Los Angeles, CA 90012

[X] **Southern Division**
411 West Fourth St., Rm. 1-053
Santa Ana, CA 92701-4516

[ ] **Eastern Division**
3470 Twelfth St., Rm. 134
Riverside, CA 92501

Failure to file at the proper location will result in your documents being returned to you.

## UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOANNE GAINES and JOHNNIE CAVE, on behalf of themselves and all other similarly situated, <div align=right>PLAINTIFF(S)</div><br>v.<br>HOME LOAN CENTER INC. dba LENDING TREE LOANS;  LENDING TREE, LLC; IAC/INTERACTIVECORP; and DOES 1 through 10. <div align=right>DEFENDANT(S).</div> | CASE NUMBER<br><br>SACV08-667 DOC (ANx)<br><br><br>**SUMMONS** |

TO:    DEFENDANT(S): _____

     A lawsuit has been filed against you.

     Within __20__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney,  Michael R. Reese _____, whose address is  Reese Richman LLP, 230 Park Avenue, 10th Floor New York, New York 10169 _____.  If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated:    **JUN 1 3 2008**    _____

By: _~~Hana Rashad~~_

Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

---

CV-01A (12/07)                                          **SUMMONS**

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
Joanne Gaines
Johnnie Cave

**DEFENDANTS**
Home Loan Center, Inc. dba Lending Tree Loans
Lending Tree, LLC
IAC/InterActiveCorp.

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
Reese Richman LLP
230 Park Avenue, 10th Floor
New York, New York 10169  Telephone: (212) 579-4625

Attorneys (If Known)
Michael R. Reese

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff     ☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant     ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☒ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☒ Yes   ☐ No        ☐ **MONEY DEMANDED IN COMPLAINT: $** _____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
18 U.S.C. sec. 1963; 15 U.S.C. sec. 1601

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☒ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 190 Other Contract | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 195 Contract Product Liability | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 196 Franchise | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | REAL PROPERTY | IMMIGRATION | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 240 Torts to Land | | | | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 245 Tort Product Liability | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 290 All Other Real Property | | | | ☐ 871 IRS-Third Party 26 USC 7609 |

SACV08-667

FOR OFFICE USE ONLY:   Case Number: _____

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CV-71 (05/08)                    CIVIL COVER SHEET                    Page 1 of 2

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

VIII(a). IDENTICAL CASES: Has this action been previously filed in this court and dismissed, remanded or closed? ☑No ☐ Yes
If yes, list case number(s):

VIII(b). RELATED CASES: Have any cases been previously filed in this court that are related to the present case? ☐ No ☑ Yes
If yes, list case number(s): 8:07-cv-00613 (AHS) (RNB)

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)  ☑ A. Arise from the same or closely related transactions, happenings, or events; or
☑ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☑ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

IX. VENUE: (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐  Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  | Joanne Gaines - New York |
|  | Johnnie Cave - Virginia |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐  Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Home Loan Center Inc. dba Lending Tree Loans - Orange County | Lending Tree, LLC - North Carolina |
|  | IAC/InterActiveCorp. - New York |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange County |  |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____  Date June 13, 2008

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |